**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

JULIUS T. HALL,                   :
                                  :   Civil Action No. 10-2345 (RMB)
                Petitioner,       :
                                  :
          v.                      :   **OPINION**
                                  :
DONNA ZICKEFOOSE,                 :
                                  :
                Respondent.       :

**APPEARANCES:**

Petitioner <u>pro se</u>            Counsel for Respondent
Julius T. Hall                     John Andrew Ruymann
F.C.I. Fort Dix                    Assistant U.S. Attorney
P.O. Box 2000                      402 East State Street
Fort Dix, NJ 08640                 Suite 430
                                   Trenton, NJ  08608

**BUMB**, District Judge

        Petitioner Julius T. Hall, a prisoner currently confined at

the Federal Correctional Institution at Fort Dix, New Jersey, has

submitted a petition for writ of habeas corpus, pursuant to 28

U.S.C. § 2241,[1] challenging the results of a prison disciplinary proceeding.  The sole respondent is Warden Donna Zickefoose.

For the reasons set forth below, the Petition will be denied.

I.  <u>BACKGROUND</u>

In August 2003, Petitioner was sentenced in the United States District Court for the Western District of New York to a term of 155 months' imprisonment.  <u>United States v. Hall</u>, Criminal No. 97-0237 (W.D.N.Y.).  Petitioner's projected release date, assuming he receives all good conduct time available to him, is September 14, 2015.

Petitioner was admitted to the Federal Correctional Institution at Schuylkill, Pennsylvania, on November 21, 2006, where he remained until he was transferred in June 2009 to the Federal Correctional Institution at Fort Dix, New Jersey.  In a May 16, 2008, Memorandum, while Petitioner was confined there, Warden T. R. Sneizek advised all FCI Schuylkill inmates as follows:

_____

[1] United States Code Title 28, Section 2241, provides in pertinent part:
> (a) Writs of habeas corpus may be granted by the ... district courts ... within their respective jurisdictions ...
> (c) The writ of habeas corpus shall not extend to a prisoner unless- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

    SUBJECT:   Inmate Discipline regarding Cellular
               Telephones and Related Electronic Devices

    This is a re-issuance of a memorandum dated October 28,
    2005, from this office:

    I have determined that inmate possession of a cellular
    telephone at this institution poses a serious threat to
    institution security.  Therefore, any inmate found in
    possession of a cellular telephone, or related
    electronic devices such as telephone chargers or
    batteries, will be charged with a violation of Code
    108, Possession, Manufacture, or Introduction of a
    Hazardous Tool.  If found guilty, inmates will be
    sanctioned accordingly.

    Also note, Bureau of Prisons' Program Statement
    5270.07, Inmate Discipline and Special Housing Units,
    states it is an inmate's responsibility to keep his
    area free of contraband.  Therefore, inmates will be
    charged with a violation of Code 108 if a cellular
    phone, or related devices, are found in an inmate's
    personal area.

(Answer, Decl. of Tara Moran, Ex. 5, Memorandum.)[2]

    On February 17, 2009, at 7:20 p.m., while he was confined at

FCI Schuylkill, Petitioner was issued Incident Report Number

1835017, which was delivered to him at 7:05 p.m. on February 18,

2009, and which charged him with a violation of Code 108

(possession, manufacture, or introduction of a hazardous tool).

The Incident Report detailed the incident, as follows:

    (Date: 2-17-09 Time: 6:45 pm staff became aware of
    incident)  On the above Date at 6:45 pm this writer was
    conducting a routine shakedown in Camp 2 Cube E08-013
    which house's inmate's Hall and [cellmate].  While
    shaking down the desk area in the cube, I took apart
    the desk light and found one Black and Silver Motorola
    cell phone with a charger hidden inside.  I then called

_____

    [2] Petitioner asserts that he never received this Memorandum.

        both inmates to the Administration Office, when they
        arrived I asked each one whose phone it was and inmate
        Hall replied that it was his and inmate [cellmate] had
        nothing to do with it.

(Answer, Decl. of Tara Moran, Ex. 4, Incident Report No. 1835017,

¶ 11.)  Upon being read the charges, Petitioner indicated that

the factual statement was true.

        At the Unit Discipline Committee hearing on February 19,

2009, Petitioner admitted that the facts of the Incident Report

were true.  The UDC concluded that the Incident Report was true

as written, based upon Petitioner's admissions and the

information provided by the reporting officer.  The UDC referred

the Incident Report to the Discipline Hearing Officer.

        The DHO hearing was held on March 9, 2009.  At the hearing,

Petitioner stated, "The report is true, the cell phone is mine."

In addition to the Incident Report and Petitioner's admissions,

the DHO considered a staff memorandum dated February 17, 2009,

and the May 16, 2008, Memorandum from Warden Sniezek.  The DHO

determined that Petitioner had committed the prohibited act of

Possession of a Hazardous Tool, contrary to Code 108.  The DHO

sanctioned Petitioner to disallowance of 54 days good conduct

time, forfeiture of 270 days of non-vested good conduct time, and

other sanctions regarding the conditions of his confinement.

        VIII.  REASON FOR SANCTION OR ACTION TAKEN

        This tool is described as a hand held portable
        telephone capable of transmitting messages undetected
        and unmonitored by staff members.  This posses[es] a

                                    4

significant security concern since this device can be utilized to have contraband introduced as well as to arrange escapes.  Accordingly, Disciplinary Segregation, the Disallowance of Good Conduct Time and the Forfeiture of Non Vested Good Conduct Time is sanctioned to punish HALL for his misconduct while the Loss of Privileges (Phone, Commissary and Visit) is sanctioned in an effort to deter him from future misconduct.

The DHO is recommending a Disciplinary Transfer to meet HALL's greater need for supervision as well as to an institution commensurate to his security needs.

(Answer, Decl. of Tara Moran, Ex. 5, Discipline Hearing Officer Report, ¶ VII.)

On or about April 20, 2009, Petitioner appealed the decision of the DHO to the Northeast Regional Office.[3]  Petitioner did not

---

[3] In general, the BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."  28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.  Id.  Appeal to the General Counsel is the final administrative appeal.  Id.

Response times for each level of review are set forth in 28 C.F.R. § 542.18.  If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

deny that he possessed the cell phone, but he asked that the sanctions be reduced.  As the sanctions were within the range for the offense, the appeal was denied.  Petitioner then appealed to the Central Office, arguing that the severity of the sanctions was disproportionate, especially in relation to the sanctions imposed on others similarly situated, in order to make an example of Petitioner.  He specifically argued that the sanctions violated his rights to due process and equal protection.  Due to the seriousness of the charge, the Central Office concurred with the sanctions imposed.

This Petition followed.  Here, Petitioner challenges the results of the disciplinary hearing on the following grounds: (1) the Bureau of Prisons failed to provide Petitioner sufficient notice that the punishment for possession of a cell phone had been increased from a moderate severity level violation to a greatest severity level violation, allegedly in violation of his right to due process; (2) the change in severity was not made in conformance with the Administrative Procedure Act; (3) the BOP violated Petitioner's rights to due process and equal protection and violated the BOP's own rules and program statements, as Petitioner was treated differently from similarly-situated

---

Discipline Hearing Officer (DHO) appeals are submitted directly to the Regional Director within 20 days.  See 28 C.F.R. §§ 542.14(d)(2), 542.15.  Therefore, DHO appeals involve fewer levels of review in order to be considered "exhausted."

prisoners within the BOP, who are charged with a lesser-severity Code 305 violation for possession of a cell phone; (4) the rule under which Petitioner was sanctioned is void for vagueness; and (5) the BOP's discretion to charge prisoners possessing a cell phone with a violation of either Code 108 or 305 permits staff to arbitrarily choose a violation with more severe sanctions, and resulted here in a violation of Petitioner's right to equal protection.[4]

Respondent has answered [9], Petitioner has filed objections [11] to the Answer, and this matter is now ready for decision.[5]

_____

[4] At the heart of all of these claims are two provisions of the Prohibited Acts Code, a regulation which sets forth four categories of prohibited acts within Bureau of Prisons institutions -- Greatest, High, Moderate, and Low Moderate severity actions -- violations of which will subject prisoners to varying levels of sanctions.  See 28 U.S.C. § 541.13.  Code 108 is a Greatest Severity offense, defined as:

> Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hacksaw blade)

Code 305 is a Moderate Severity offense, defined as:

> Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels

28 C.F.R. § 541.13 (table).

[5] On February 3, 2011, after filing his Objections, Petitioner filed a Motion [12] to stay this matter so that he could file a further traverse to the Answer.  In support of this Motion, Petitioner stated that he had been denied access to the

7

II.   LEGAL STANDARD

"Habeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994).  A petition must "specify all the grounds for relief" and must set forth "facts supporting each of the grounds thus specified."  See Rule 2(c) of the Rules Governing § 2254 Cases in the U.S. District Courts (amended Dec. 1, 2004) ("Habeas Rules"), made applicable to § 2241 petitions through Rule 1(b) of the Habeas Rules.

Nevertheless, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

III.   ANALYSIS

---

prison library.  In his papers, however, although he detailed the hours of operation of the library and the somewhat overlapping hours of his job and roll call, he failed to provide any factual information regarding his efforts to use the library during the pendency of this action, including the six months between the time Respondent filed her Answer and Petitioner filed his Motion. As Petitioner had already filed objections to the Answer months before filing this Motion, and has not demonstrated any need for a stay, this Motion will be denied.

A.   <u>Exhaustion of Administrative Remedies</u>

In her Answer, Respondent correctly notes that several of Petitioner's claims are unexhausted and urges this Court to dismiss those claims on that ground.   In the alternative, Respondent asserts that all of Petitioner's claims are meritless.

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.   <u>See</u>, <u>e.g.</u>, <u>Callwood v. Enos</u>, 230 F.3d 627, 634 (3d Cir. 2000); <u>Arias v. United States Parole Comm'n</u>, 648 F.2d 196, 199 (3d Cir. 1981); <u>Soyka v. Alldredge</u>, 481 F.2d 303, 306 (3d Cir. 1973).   The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

<u>Goldberg v. Beeler</u>, 82 F.Supp.2d 302, 309 (D.N.J. 1999), <u>aff'd</u>, 248 F.3d 1130 (3d Cir. 2000).   <u>See also</u> <u>Moscato v. Federal Bureau of Prisons</u>, 98 F.3d 757, 761 (3d Cir. 1996).   Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.   <u>See</u>, <u>e.g.</u>, <u>Gambino v. Morris</u>, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); <u>Lyons v. U.S. Marshals</u>,

9

840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

Here, the only claims that Petitioner administratively exhausted are the claims that the sanctions were too severe and that he was treated differently from other similarly-situated inmates.  Accordingly, all other claims will be dismissed for failure to exhaust administrative remedies.  In the alternative, all of Petitioner's claims are meritless.

B.   Petitioner's Claims

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Haines v. Kerner, 404 U.S. 519 (1972); Wilwording v. Swenson, 404 U.S. 249 (1971).  Such protections are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed. ...  In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the

10

Constitution that are of general application." <u>Wolff</u>, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or from state or federal law.  <u>See</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983); <u>Asquith v. Department of Corrections</u>, 186 F.3d 407, 409 (3d Cir. 1999).

Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a sanction,[6] "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." <u>Wolff</u>, 418 U.S. at 557.

Thus, a prisoner is entitled to an impartial disciplinary tribunal, <u>Wolff</u>, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the

---

[6] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison.  Congress, however, has provided that federal prisoners serving a term of imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of their sentence based upon their conduct.  <u>See</u> 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

charge from sitting on the disciplinary body," <u>Meyers v.</u>
<u>Alldredge</u>, 492 F.2d 296, 306 (3d Cir. 1974).

To comply with the requirements of the Due Process Clause,
prison officials also must provide a prisoner facing loss of good
time credits with: (1) a written notice of the charges at least
24 hours prior to any hearing, (2) an opportunity to call
witnesses and presented documentary evidence in his defense when
permitting him to do so will not be unduly hazardous to
institutional safety or correctional goals,[7] and (3) a written
statement by the factfinders as to the evidence relied on and the
reasons for the disciplinary action.  <u>Wolff</u>, 418 U.S. at 564-66.
Prisoners do not have a due process right of confrontation and
cross-examination, or a right to counsel, in prison disciplinary
proceedings.  <u>Id.</u> at 569-70.  Where an illiterate inmate is
involved, or the complexity of the issue makes it unlikely that
the inmate involved will be able to collect and present the
evidence necessary for an adequate comprehension of the case, the

_____

[7] Prison officials must justify their refusal to call
witnesses requested by the prisoner, but such justification need
not be presented at the time of the hearing.  To the contrary,
the explanation for refusal to call witnesses requested by the
prisoner may be provided through court testimony if the
deprivation of a liberty interest is challenged because of that
claimed defect in the hearing.  <u>See</u> <u>Ponte v. Real</u>, 471 U.S. 491
(1985).  "{P}rison officials may deny a prisoner's request to
call a witness in order to further prison security and
correctional goals.  ... [T]he burden of persuasion as to the
existence and sufficiency of such institutional concerns is borne
by the prison officials, not by the prisoners."  <u>Grandison v.</u>
<u>Cuyler</u>, 774 F.2d 598, 604 (3d Cir. 1985).

12

prisoner should be permitted to seek the aid of a fellow inmate or appropriate staff member.  Id. at 570.

In addition, due process requires that findings of a prison disciplinary official, that result in the loss of good time credits, must be supported by "some evidence" in the record. Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill, 472 U.S. 445, 454-56 (1985).[8]

Finally, the "harmless error" rule applies to federal court review of prison disciplinary actions.  See Elkin v. Fauver, 969 F.2d 48 (3d Cir.), cert. denied, 506 U.S. 977 (1992); Powell v. Coughlin, 953 F.2d 744 (2d Cir. 1991); Pressley v. Blaine, 544 F.Supp.2d 446, 457 (W.D. Pa. 2008).

Here, there is no suggestion that the Bureau of Prisons failed to comply with these due process principles applicable to discipline hearings that result in loss of good time credits. Certainly, Petitioner admits there was ample evidence that he possessed a cellular telephone.  Moreover, the sanctions imposed clearly are within the sanctions permitted for a violation of

---

[8] The due process requirements of Wolff, as they relate to federal prisoners, have been codified in the Code of Federal Regulations at 28 C.F.R. § 541.10 et seq.  See, e.g., 28 C.F.R. § 541.14 (Incident report and investigation); 28 C.F.R. § 541.16 (Establishment and functioning of the Discipline Hearing Officer); 28 C.F.R. § 541.17 (Procedures before the Discipline Hearing Officer).

Code 108.  <u>See</u> 28 C.F.R. § 514.13.[9]  Instead, Petitioner has challenged the discipline proceeding on various other grounds, discussed below.

---

[9] To the extent the Petition could be construed as asserting that the BOP failed to comply with these due process provisions, any such claim is meritless.

1.   <u>The Due Process "Notice" Claim</u>

Petitioner alleges that the Bureau of Prisons failed to provide him sufficient notice that the punishment for possession of a cell phone had been increased from a moderate severity level violation, under Code 305 which prohibits contraband, to a greatest severity level violation under Code 108 which prohibits hazardous tools, allegedly in violation of his right to due process.  Although it is undisputed that the Warden issued a memorandum advising prisoners that cell phones would be considered tools under Code 108 prior to the time of Petitioner's Incident Report, he alleges that he did not receive the memorandum.

Petitioner does not contend that he was not on notice that possession of a cellular telephone was a prohibited act, notwithstanding that neither Code 108 nor 305 specifically refers to cellular telephones.  Instead, Petitioner merely asserts that he had some sort of entitlement, based upon alleged prior practice by the BOP, to discipline under a lower severity (and lower sanction) provision.  Petitioner has no such "due process" entitlement.  To the contrary, while Petitioner has due process rights to notice as to general categories of acts prohibited, he has no due process right to personal notice as to any specific administrative sanction he might face if his violation is detected.  <u>See</u>, <u>e.g.</u>, <u>Ortiz v. Zickefoose</u>, Civil No. 10-4174,

15

2011 WL 1675003 (D.N.J. May 3, 2011), and cases cited therein.
Petitioner was put on notice, by the very language of Code 108,
that Code 108 sanctions could be imposed upon him for possession
of a hazardous tool "likely to be used in an escape or escape
attempt" or "hazardous to institutional security," descriptions
plainly applicable to unauthorized cellular telephones in a
prison.  Cf. Robinson v. Warden, 250 Fed.Appx. 462 (3d Cir. 2007)
(per curiam) (rejecting the inmate's argument that Code 108 was
too vague to provide notice of its applicability to possession of
a cellular telephone).  Thus, Petitioner had adequate notice that
possession of cellular telephones was prohibited and that such
possession could result in a Code 108 violation charge.

2.  The APA Claim

     Plaintiff alleges that the change in interpretation of Code
108 was not made in conformance with the Administrative
Procedures Act, 5 U.S.C. § 551, et seq.  He bases this claim
largely on the fact that in 2005 the Attorney General proposed a
change to Code 108 that would explicitly have listed a cellular
telephone as a hazardous tool, but that proposed amendment was
never formally enacted.

     Under the APA, certain "legislative" rules that impose new
duties upon the regulated party must be promulgated in accordance
with "notice-and-comment" requirements set forth in the APA,
including the requirement that notice of the proposed regulation

16

be given in the Federal Register and that interested persons be afforded an opportunity to comment.  See generally Chao v. Rothermel, 327 F.3d 223 (3d Cir. 2003).

Bureau of Prisons internal agency guidelines and interpretive rules, however, are not subject to the notice-and-comment requirements of the Administrative Procedures Act and, moreover, are entitled to "some deference" where they are a permissible construction of the governing statute.  See Reno v. Koray, 515 U.S. 50, 61 (1995); 5 U.S.C. § 553(b)(3)(A).

Pursuant to 18 U.S.C. § 4042, the Attorney General shall provide for the discipline of all persons convicted of offenses against the United States.  Pursuant to 18 U.S.C. § 3624(b), a prisoner serving a term of more than one year may receive good-conduct credit toward the service of his sentence subject to determination by the BOP that "the prisoner has displayed examplary compliance with institutional disciplinary regulations."  The decision that possession of a cellular telephone constitutes a violation of Code 108, subjecting a prisoner to loss of good-conduct time, is an interpretive rule of the BOP, is not subject to the notice-and-comment rules of the APA, and is a reasonable interpretation of the BOP's governing statutes.  See, e.g., McGill, Jr. v. Martinez, 348 Fed.Appx. 718, 721, 2009 WL 3326139 (3d Cir. 2009); Vasquez v. Shartle, Civil

17

No. 10-2511, 2011 WL 1004934 (N.D. Ohio March 18, 2011).
Petitioner is not entitled to relief on this claim.

3.   The Equal Protection Claims

Plaintiff alleges that the BOP violated his right to equal
protection by treating him differently from similarly-situated
prisoners, and by imposing harsh sanctions in order to "make an
example" of him.  More specifically, he alleges that BOP
personnel have discretion to charge prisoners possessing
unauthorized cell phones under either Code 108 or 305, which
resulted in his being treated differently from other prisoners
who were charged with a lesser-severity Code 305 violation.

The concept of equal protection as embodied in the Due
Process Clause of the Fifth Amendment, see Bolling v. Sharpe, 347
U.S. 497 (1954), has been construed to implicitly include an
equal protection guaranty generally as broad as that of the
Fourteenth Amendment, applicable to the states.  See United
States v. Milan, 304 F.3d 273, 281 n.6 (3d Cir. 2002) (citing
United States v. Leslie, 813 F.2d 658 (5th Cir. 1987)), cert.
denied, 538 U.S. 1024 (2003).

The Equal Protection Clause of the Fourteenth Amendment
commands that no State shall "deny to any person within its
jurisdiction the equal protection of the laws," which is
essentially a direction that all persons similarly situated
should be treated alike.  City of Cleburne, Texas v. Cleburne

18

Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982); Artway v. Attorney General of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996).  Despite its sweeping language, though, "[t]he Equal Protection Clause does not forbid classifications.  It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim; a plaintiff also must prove that the defendant intended to discriminate.  Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264-66 (1977); Washington v. Davis, 426 U.S. 229, 242, 244-45 (1976).  Thus, discriminatory intent must be a motivating factor in the decision, but it need not be the sole motivating factor.  Village of Arlington Heights, 429 U.S. at 265-66.

Once this intentional disparity in treatment is shown, a court will proceed to determine whether the disparity can be justified under the requisite level of scrutiny.  See City of Cleburne, 473 U.S. at 439-40; Plyler v. Doe, 457 U.S. 202, 216-17 (1982); Price v. Cohen, 715 F.2d 87, 91-92 (3d Cir. 1983), cert. denied, 465 U.S. 1032 (1984).  In testing the validity of legislation or other official action that is alleged to deny equal protection, the "general rule is that legislation is presumed to be valid and will be sustained if the classification

19

drawn by the statute is rationally related to a legitimate state interest." City of Cleburne, 473 U.S. at 439-40. The general rule gives way, however, when a statute classifies by race, alienage, or national origin; outside of the prison context, these classifications "are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest." Id. at 440.

Here, Petitioner does not assert that he is a member of any suspect class, but merely asserts that prison officials have discretion which charge to impose and that two or three prisoners who allegedly had cellular telephones were disciplined for violations of the lesser-severity Code 305 rather than 108.[10] Petitioner has not provided any evidence as to the reasons why the Code 108 charges against these prisoners were expunged. Without any further information, however, Petitioner has failed to establish that these prisoners, or any others charged with the lesser-severity Code 305 violation, were "similarly situated" to him. The fact that prison officials have discretion to charge different violations, depending upon the circumstances applicable

_____

[10] Petitioner refers to inmates Christopher Neagle (Neagle v. Grondolsky, Civil No. 09-2016 (D.N.J.) and Duane E. Hudson (Hudson v. Zickefoose, Civil No. 10-0251 (D.N.J.). From a review of the dockets in those cases, it appears that Christopher Neagle was confined at the Federal Prison Camp at Duluth, Minnesota, at the time of his discipline charge and Duane Hudson was confined at the Federal Prison Camp at Yankton, South Dakota at the time of his charge. Petitioner asserts that the Code 108 charges against these prisoners were "expunged."

to an individual case, is not sufficient to state a claim for an equal protection violation.  Petitioner is not entitled to relief on this claim.  See, e.g., Ortiz v. Zickefoose, Civil No. 10-4174, 2011 WL 1675003 (D.N.J. May 3, 2011); Ramirez v. Zickefoose, Civil No. 11-0189, 2011 WL 1045077 (D.N.J. March 23, 2011); Vasquez v. Shartle, Civil No. 10-2511, 2011 WL 1004934 (N.D. Ohio March 18, 2011).

4.   The "Void for Vagueness" Claim

Finally, Petitioner asserts that Code 108 is void for vagueness.

The Court of Appeals for the Third Circuit has specifically rejected the argument that Code 108 is void for vagueness and that a cell phone is not a hazardous tool.

> A statute or regulation must fail for vagueness if it "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning." Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926).  Prohibited acts under BOP regulations include Code 108, entitled "Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade)." 28 C.F.R. § 541.13, Table 3.  Code 108 is not unconstitutionally vague on its face.  ...  The BOP's definition of a hazardous tool to include a cell phone is not plainly erroneous or inconsistent with BOP regulations, see Chong v. Dist. Dir., I.N.S., 264 F.3d 378, 389 (3d Cir. 2001) ... .

Robinson v. Warden, 250 Fed.Appx. 462, 464, 2007 WL 1140462 (3d Cir. 2007).  See also Hicks v. Yost, 377 Fed.Appx. 223, 2010 WL

1619262 (3d Cir. 2010).   Accordingly, Petitioner is not entitled to relief on this claim.

IV.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition will be denied.   An appropriate order follows.

<u>s/Renée Marie Bumb</u>
Renée Marie Bumb
United States District Judge

Dated:<u> June 1, 2011</u>

22